IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-30067-hcm |
| A&R CHAVIRA, LLC, | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

### NEXTGEAR CAPITAL, INC.'S MOTION FOR RELIEF FROM AUTOMATIC STAY REGARDING BLANKET LIEN COLLATERAL

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 14 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NextGear Capital, Inc. ("NextGear"), files this its Motion for Relief from Automatic Stay Regarding Blanket Lien Collateral (the "Motion"), and in support thereof would respectfully show the Court the following:

### I.
### Jurisdiction

1. This is a proceeding under Bankruptcy Rules 4001 and 9014, seeking relief under Sections 362(d) and 1301(c) of the Bankruptcy Code. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 1334 and Sections 105 and 362 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(G) and (O).

2. A&R Chavira, LLC ("Debtor") initiated the current Chapter 11 bankruptcy petition in the El Paso Division of the Western District of Texas on January 24, 2023 (the "Petition Date") as Case No. 23-30067.

## II.
## Relevant Facts

3.　　NextGear previously filed its Motion For Relief From Automatic Stay Regarding Motor Vehicle Inventory [Doc. # 13] on February 13, 2023 (the "First Lift Stay Motion").[1] Pursuant to the First Lift Stay Motion, NextGear sought stay relief with respect to certain Remaining Inventory vehicles that were financed by NextGear. After setting the First Lift Stay Motion for an expedited hearing, Debtor entered into an Agreed Order Lifting Automatic Stay Regarding Motor Vehicle Inventory [Doc. # 26] (the "Agreed Order"), which was subsequently filed and entered by this Court on February 22, 2023. The Agreed Order lifted the automatic stay as to twenty-three (23) vehicles (collectively, the "Vehicles") identified in the body of the Agreed Order.[2] Twenty-One (21) of the twenty-three (23) Vehicles were identified by NextGear as being in possession of Debtor in the First Lift Stay Motion, as two (2) of the Vehicles were identified in the First Lift Stay Motion as being sold out of trust.[3]

4.　　On the same day the Agreed Order was entered in this matter, Debtor filed its Schedules [Doc. # 22]. Debtor's Schedule "D" identifies NextGear as a secured creditor whose secured collateral is identified in an Exhibit "B" attached to Debtor's Schedules. Additionally, NextGear's debt is not listed by Debtor as disputed, unliquidated, or contingent. Meanwhile, a document identified by Debtor as Exhibit "A" to Debtor's Schedules referenced various units in stock at Debtor's lot and was filed as Doc. # 22-1. A true and correct copy of the Exhibit "A" stock sheet (the "Stock Sheet") is attached hereto as Exhibit "1."

---

[1] NextGear incorporates the First Lift Stay Motion by reference as if fully set forth herein, including the Affidavit of Lucas Hancock and all exhibits attached thereto [Doc. # 13 and Doc. # 13-1].
[2] NextGear incorporates the definition of the term "Vehicles" as defined on page 1 of the Agreed Order.
[3] *See* First Lift Stay Motion, para. 8.

5. According to the Stock Sheet, Debtor indicated it only had sixteen (16) NextGear-financed vehicles in stock instead of the anticipated twenty-one (21) Vehicles. Moreover, the Stock Sheet indicated seven (7) NextGear vehicles had been sold under the heading "UNITS SOLD RA Auto Group", with $0 to collect on such sold vehicles. However, it was unclear per the information provided on the Stock Sheet which specific Vehicles Debtor had in its possession, which Vehicles were sold, or where such Vehicles that had not been sold were located. Counsel for NextGear made written inquiry to counsel for Debtor via e-mail on February 22, 2023, to explain which NextGear Vehicles were available for pickup per the Agreed Order by year, make model, and vehicle identification number. Debtor's counsel responded on February 24, 2023, that he was "working on this" and would stay in touch. A copy of the e-mail exchange between counsel for NextGear and counsel for Debtor dated February 22, 2023, through February 24, 2023, is attached hereto as Exhibit "2."

6. At Debtor's initial 341 creditor's meeting held on March 1, 2023, counsel for NextGear had still not received clarification on the Stock Sheet that was originally sought in February 22, 2023. During the 341 creditor's meeting, Debtor's representative, Mr. Chavira, advised counsel for NextGear that he would provide a supplemental list identifying which Vehicles were in the possession, custody or control of Debtor by year, make, model, and vehicle identification number. Mr. Chavira also promised to provide the year, make, model, and vehicle identification number of Vehicles that had been sold by Debtor. According to Mr. Chavira's testimony, it was "possible" that the sales proceeds from the NextGear vehicles identified as being sold on the Stock Sheet were used to pay other creditors of Debtor.

7. In addition, Mr. Chavira testified at his 341 creditor's meeting that subsequent to the Petition Date, Debtor had been paying Debtor's employees and expenses in the operation of

Debtor's business. Mr. Chavira further confirmed the funds used to pay such employees and expenses came from Debtor's bank account. Mr. Chavira further admitted he did not segregate or escrow funds from sales proceeds of NextGear's Vehicles, but instead was unaware he needed NextGear's permission to use such funds in the bankruptcy proceeding. Currently, Debtor has not filed any motion seeking use of cash collateral, no order has otherwise been entered permitting Debtor to use cash collateral, and NextGear has not consented to any such use of cash collateral. Moreover, neither Debtor nor Debtor's counsel has provided a full accounting of what funds were used to pay Debtor's expenses and payroll subsequent to the Petition Date.

8. On March 3, 2023, counsel for Debtor produced to counsel for NextGear a supplemental document (the "Supplemental List") identifying fourteen (14) vehicles (collectively, the "Surrendered Vehicles") available for surrender to NextGear by year, make, model, and last-six of the vehicle identification number along with such vehicles' current location. A true and correct copy of the Supplemental List is attached hereto as Exhibit "3." Debtor did not explain why the sixteen (16) vehicles identified as being "UNITS IN STOCK" as previously represented in the Stock Sheet were not all accounted for in the Supplemental List. Meanwhile, nine (9) vehicles (collectively, the "Sold Vehicles") were identified on the Supplemental List as being "Sold-Funded," and various documentation identifying the sales date and sales amount for the Sold Vehicles was also forwarded to counsel for NextGear.

9. Upon receipt of the Supplemental List, NextGear took steps to secure the Surrendered Vehicles identified as being available for pickup. The addresses of the fourteen (14) Surrendered Vehicles were listed on the Supplemental List and included storage facilities for which third-parties' cooperation was needed to facilitate the surrender of the Surrendered Vehicles.

10. Given the surprising number of the Sold Vehicles that were admittedly sold out of trust by Debtor, the uncertainty and difficulty in locating and repossessing the Surrendered Vehicles, and Mr. Chavira's testimony at the 341 creditor's meeting that Debtor funds had been used post-petition to pay Debtor's expenses and payroll, NextGear made demand for information relevant to its blanket lien on any other vehicles located on Debtor's lot that are not otherwise subject to a competing floorplan lender's security interest. Counsel for NextGear followed up with counsel for Debtor via e-mail on March 17, 2023, once again reminding Debtor that the requested list of additional non-floor plan vehicles had not been provided and seeking feedback on whether Debtor is opposed to stay relief on such remaining non-floor plan vehicles. Counsel for NextGear once again advised counsel for Debtor in a March 20th e-mail that the requested list of non-floor planned vehicles had not been provided. A true and correct copy of the e-mail exchange between counsel for NextGear and counsel for Debtor from March 17th to March 20th is attached hereto as Exhibit "4."

11. As set forth in the First Lift Stay Motion, NextGear is in the business of providing secured financing to car dealers through which those car dealers may finance some or all of their inventory held for resale to retail consumers ("floor plan financing"). NextGear extended a credit line to Debtor, and to evidence its obligations to NextGear, Debtor executed and delivered a Demand Promissory Note and Loan and Security Agreement (the "Note").[4] Pursuant to the terms of the Note, Debtor granted to NextGear a perfected, first-priority blanket security interest in all personal property assets of the Debtor, including but not limited to all of Debtor's remaining inventory vehicles that are not otherwise floor planned by another entity in addition to cash collateral, accounts receivable, and all other assets to which NextGear's blanket security

---

[4] A true and correct copy of the Note is attached to NextGear's First lift Stay Motion as Exhibit "A," which is

**MOTION FOR RELIEF FROM AUTOMATIC STAY REGARDING BLANKET LIEN COLLATERAL -** **PAGE 5**

interest attaches (collectively, the "Blanket Lien Collateral").[5] At this time, NextGear is not seeking stay relief as to any inventory vehicles financed by Vehicle Acceptance Corporation as identified in the Order Regarding Motion for Relief from Stay [Doc. # 43], which NextGear is excluding from the scope of the Blanket Lien Collateral as defined herein. However, nothing in this Motion should be construed as a waiver of NextGear's rights into any vehicles financed by Vehicle Acceptance Corporation, and NextGear expressly reserves regarding the issue of lien priority in all such motor vehicles financed by Vehicle Acceptance Corporation.

12. Although counsel for Debtor indicated on March 20th that he intended to file a debtor-in-possession financing motion, cash collateral motion, and adequate protection motion by Wednesday, March 22, 2023, no such motions have been filed. Given Debtor's post-petition conduct concerning the use of cash collateral for improper purposes and failure to properly account for all such expenditures without the entry of an order of this Court, NextGear is filing the instant Motion so that the automatic stay may be lifted with respect to NextGear's Blanket Lien Collateral.

### III.
### Relief from Stay

16. By reason of the foregoing, NextGear requests the Court terminate the automatic stay so NextGear may exercise all of its rights and remedies against the Blanket Lien Collateral under state law, including, <u>inter alia</u>, foreclosing its ownership and/or first priority security interests in the Blanket Lien Collateral.

17. Under Section 362(d)(1), upon request and after notice and hearing, the bankruptcy court shall lift the automatic stay "for cause." *11 U.S.C.* § 362(d)(1). A court shall

---

incorporated herein by reference.
[5] A true and correct copy of NextGear's UCC-1 Financing Statement is attached to NextGear's First Lift Stay

grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). "Cause" is not defined in title 11, which therefore requires bankruptcy courts to determine whether cause exists on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343, n.4 (5th Cir. 1998).

18. Cause exists to lift the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to the Blanket Lien Collateral because: (1) Debtor has admittedly sold the nine (9) Sold Vehicles listed on the Supplemental List out of trust and has improperly retained the sales proceeds that Debtor should have otherwise forwarded to NextGear within twenty-four (24) hours of receipt per paragraph 4(f) of the Note; (2) Debtor has admittedly used NextGear's cash collateral subsequent to the Petition Date to pay Debtor's expenses and employees without entry of any order permitting Debtor to use such cash collateral; (3) the sales proceeds anticipated from the foreclosure and sale of the fourteen (14) Surrendered Vehicles as set forth in the estimated fair market value set forth in paragraph 12 of the First Lift Stay Motion is going to be wholly insufficient to satisfy NextGear's debt amount of $273,819.95 as of February 7, 2023; (4) it is unclear whether valid and effective insurance coverage exists as to any other non-floor planned vehicles located on Debtor's lot; (5) the Blanket Lien Collateral continues to depreciate while it remains in Debtor's possession, custody, and control; and (6) Debtor's conduct jeopardizes and irreparably harms NextGear's security interest securing the Indebtedness under the Note since Debtor's use or sale of its Blanket Lien Collateral extinguishes NextGear's security interest in same. Alternatively, NextGear requests entry of an order granting NextGear sufficient adequate protection that places stringent conditions and restrictions on Debtor's possession, use, storage,

---

Motion as Exhibit "B" and is incorporated herein by reference.

and sale of the Blanket Lien Collateral. Since time is of the essence in locating and securing the Blanket Lien Collateral, NextGear intends to seek an expedited hearing of this Motion.

19. Stay relief is also requested pursuant to 11 U.S.C. §362(d)(2) of the Bankruptcy Code. The Debtor has no equity interest in the Blanket Lien Collateral. Debtor's schedules [Doc. # 22] show only $11,000.00 in accounts receivable and two security deposits associated with an auto car lot and mechanic's shop. However, the itemized valuation of Debtor's assets does not add up to the $446,700.00 as specified on page 6 of Debtor's schedules, and no other assets are identified or disclosed that would justify such amount. After accounting for the lifting of the automatic stay as to NextGear's twenty-three Vehicles and Vehicle Acceptance Corporation's thirty-two (32) vehicles identified in the Agreed Order Granting Motion Of Vehicle Acceptance Corporation For Relief From Stay Against Property Of The Estate [Doc. # 43], the value of any remaining inventory vehicles consisting of Blanket Lien Collateral is insufficient to satisfy the remaining Indebtedness owed to NextGear. Thus, the Indebtedness amount exceeds the fair market value of the Blanket Lien Collateral. Further, absent any motion for post-petition financing or motion to use cash collateral to continue operations, the Blanket Lien Collateral is not necessary for an effective reorganization, as Debtor is unable to acquire any additional motor vehicle inventory to continue its business. Thus, stay relief is appropriate under 11 U.S.C. § 362(d).

20. NextGear requests that an order granting its motion for relief from automatic stay, if such order should be entered, will be effective immediately upon entry and that the provisions of Rule 4001(a)(3) should be waived and NextGear be permitted to immediately enforce and implement the order granting relief from the automatic stay.

## IV.
### CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated herein, NextGear requests that this matter be set for hearing, if no objection is timely filed, as provided in Sections 362(e) and 1301(d) of the Bankruptcy Code, and that the Court enter an Order granting NextGear relief from the Automatic Stay to permit NextGear to foreclose its lien on the Blanket Lien Collateral as prayed for in this motion, award NextGear its attorneys' fees to the extent there exists any equity in the Blanket Lien Collateral, or alternatively, grant NextGear adequate protection prior to the confirmation of any Chapter 11 Plan by the Debtor as a result of Debtor's continued use and possession of the Blanket Lien Collateral, and grant to NextGear such other and further relief to which it may be justly entitled.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax


/s/ Christopher V. Arisco
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for NextGear*

### CERTIFICATE OF CONFERENCE

I certify that on March 20, 2023, counsel for NextGear exchanged e-mails with counsel for Debtor to discuss the relief sought in this Motion. Pursuant to the e-mail exchange, Debtor is opposed to the relief sought herein.

/s/ Christopher V. Arisco
Christopher V. Arisco

## CERTIFICATE OF SERVICE

  The undersigned converted the foregoing document into an electronic image, via portable document format (.pdf), electronically submitted same to the Internet web portal for the Clerk of this Court utilizing the Electronic Management and Electronic Case Filing system of the Court, which has caused service, via Simple Mail Transfer Protocol (e-mail), of a Notice of Electronic Filing of this imaged document to the below-identified parties on Thursday, March 30, 2023; said e-mail provides an attributable hyperlink to the document, in portable document format, except for Debtor(s), and any other entity so identified below or on the EM/ECF filing sheet, whereas in that instance such document was mailed via First Class United States Mail, to-wit:

| | |
|---|---|
| **A&R Chavira, LLC**<br>6900 Gateway Blvd. East<br>El Paso, Texas 79915<br><br>*Debtor* | **Carlos A. Miranda**<br>Miranda & Maldonado, P.C.<br>5915 Silver Springs, Bldg. 7<br>El Paso, Texas 79912<br><br>*Attorney for Debtor* |
| **United States Trustee**<br>615 E. Houston, Suite 533<br>San Antonio, Texas 78295 | **Vehicle Acceptance Corporation**<br>Kemp Smith, LLP<br>**Attn: James W. Brewer**<br>PO Box 2800<br>El Paso, Texas 79999-2800 |
| **All those receiving ECF notification in this case and the attached list of the 20 largest unsecured creditors.** | |

                /s/ Christopher V. Arisco
                Christopher V. Arisco