IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-30067-hcm |
| A&R CHAVIRA, LLC, | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**NEXTGEAR CAPITAL, INC.'S MOTION TO ENJOIN DEBTOR'S IMPROPER USE OF CASH COLLATERAL AND MOTION TO APPOINT CHAPTER 11 TRUSTEE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NextGear Capital, Inc. ("NextGear"), files this its Motion To Enjoin Debtor's Improper Use Of Cash Collateral and Motion To Appoint Chapter 11 Trustee (the "Motion"), and in support thereof would respectfully show the Court the following:

**I.
Jurisdiction**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. Section 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

**II.
Relevant Facts**

2. A&R Chavira, LLC ("Debtor") initiated the current Chapter 11 bankruptcy petition in the El Paso Division of the Western District of Texas on January 24, 2023 (the "Petition Date") as Case No. 23-30067

3. NextGear previously filed its Motion For Relief From Automatic Stay Regarding Motor Vehicle Inventory [Doc. # 13] on February 13, 2023 (the "First Lift Stay Motion").[1]

---

[1] NextGear incorporates the First Lift Stay Motion by reference as if fully set forth herein, including the Affidavit of

MOTION TO APPOINT CHAPTER 11 TRUSTEE AND ENJOIN DEBTOR'S USE OF CASH COLLATERAL - PAGE 1

Pursuant to the First Lift Stay Motion, NextGear sought stay relief with respect to certain Remaining Inventory vehicles that were financed by NextGear. After setting the First Lift Stay Motion for an expedited hearing, Debtor entered into an Agreed Order Lifting Automatic Stay Regarding Motor Vehicle Inventory [Doc. # 26] (the "Agreed Order"), which was subsequently filed and entered by this Court on February 22, 2023. The Agreed Order lifted the automatic stay as to twenty-three (23) vehicles (collectively, the "Vehicles") identified in the body of the Agreed Order.[2] Twenty-One (21) of the twenty-three (23) Vehicles were identified by NextGear as being in possession of Debtor in the First Lift Stay Motion, as two (2) of the Vehicles were identified in the First Lift Stay Motion as being sold out of trust.[3]

4. On the same day the Agreed Order was entered in this matter, Debtor filed its Schedules [Doc. # 22]. Debtor's Schedule "D" identifies NextGear as a secured creditor whose secured collateral is identified in an Exhibit "B" attached to Debtor's Schedules. Additionally, NextGear's debt is not listed by Debtor as disputed, unliquidated, or contingent. Meanwhile, a document identified by Debtor as Exhibit "A" to Debtor's Schedules referenced various units in stock at Debtor's lot and was filed as Doc. # 22-1. A true and correct copy of the Exhibit "A" stock sheet (the "Stock Sheet") is attached hereto as Exhibit "1."

5. According to the Stock Sheet, Debtor indicated it only had sixteen (16) NextGear-financed vehicles in stock instead of the anticipated twenty-one (21) Vehicles. Moreover, the Stock Sheet indicated seven (7) NextGear vehicles had been sold under the heading "UNITS SOLD RA Auto Group," with $0 to collect on such sold vehicles. However, it was unclear per the information provided on the Stock Sheet which specific Vehicles Debtor had in its

---

Lucas Hancock and all exhibits attached thereto [Doc. # 13 and Doc. # 13-1].
[2] NextGear incorporates the definition of the term "Vehicles" as defined on page 1 of the Agreed Order.
[3] *See* First Lift Stay Motion, para. 8.

MOTION TO APPOINT CHAPTER 11 TRUSTEE AND ENJOIN DEBTOR'S USE OF CASH COLLATERAL - PAGE 2

possession, which Vehicles were sold, or where such Vehicles that had not been sold were located. Counsel for NextGear made written inquiry to counsel for Debtor via e-mail on February 22, 2023, to explain which NextGear Vehicles were available for pickup per the Agreed Order by year, make, model, and vehicle identification number ("VIN"). Debtor's counsel responded on February 24, 2023, that he was "working on this" and would stay in touch. A copy of the e-mail exchange between counsel for NextGear and counsel for Debtor dated February 22, 2023, through February 24, 2023, is attached hereto as Exhibit "2."

6. At Debtor's initial 341 creditor's meeting held on March 1, 2023, counsel for NextGear had still not received clarification on the Stock Sheet that was originally sought in February 22, 2023. During the 341 creditor's meeting, Debtor's representative, Mr. Chavira, advised counsel for NextGear that he would provide a supplemental list identifying which Vehicles were in the possession, custody or control of Debtor by year, make, model, and VIN. Mr. Chavira also promised to provide the year, make, model, and VIN of Vehicles that had been sold by Debtor. According to Mr. Chavira's testimony, it was "possible" that the sales proceeds from the NextGear vehicles identified as being sold on the Stock Sheet were used to pay other creditors of Debtor.

7. In addition, Mr. Chavira testified at his 341 creditor's meeting that subsequent to the Petition Date, Debtor had been paying Debtor's employees and expenses in the operation of Debtor's business. Mr. Chavira further confirmed the funds used to pay such employees and expenses came from Debtor's bank account. Mr. Chavira further admitted he did not segregate or escrow funds from sales proceeds of NextGear's Vehicles, but instead was unaware he needed NextGear's permission to use such funds in the bankruptcy proceeding. Currently, Debtor has not filed any motion seeking use of cash collateral, no order has otherwise been entered

permitting Debtor to use cash collateral, and NextGear has not consented to any such use of cash collateral. Moreover, neither Debtor nor Debtor's counsel has provided a full accounting of what funds were used to pay Debtor's expenses and payroll subsequent to the Petition Date.

8. On March 3, 2023, counsel for Debtor produced to counsel for NextGear a supplemental document (the "Supplemental List") identifying fourteen (14) vehicles (collectively, the "Vehicles to be Surrendered") which purportedly would be available for surrender to NextGear by year, make, model, and last six digits of the VIN, along with such vehicles' current locations. A true and correct copy of the Supplemental List is attached hereto as Exhibit "3." Debtor did not explain why the sixteen (16) vehicles identified as being "UNITS IN STOCK" as previously represented in the Stock Sheet were not all accounted for in the Supplemental List. Meanwhile, nine (9) vehicles (collectively, the "Sold Vehicles") were identified on the Supplemental List as being "Sold-Funded," and various documentation identifying the sales date and sales amount for the Sold Vehicles was also forwarded to counsel for NextGear.

9. Upon receipt of the Supplemental List, NextGear took steps to secure the vehicles that had been identified by the Debtor as purportedly being available for pickup. The addresses of the fourteen (14) Vehicles to be Surrendered were listed on the Supplemental List and included storage facilities for which third-parties' cooperation was needed to facilitate such vehicles' recovery by NextGear. As of the date of this Motion, NextGear has been able to recover only two (2) of the Vehicles to be Surrendered.

10. Given the surprising number of the Sold Vehicles that were admittedly sold out of trust by Debtor, the uncertainty and difficulty in locating and repossessing the Vehicles to be Surrendered, and Mr. Chavira's testimony at the 341 creditor's meeting that Debtor funds had

been used post-petition to pay Debtor's expenses and payroll, NextGear made a demand for information relevant to its blanket lien on any other vehicles located on Debtor's lot that are not otherwise subject to a competing floorplan lender's security interest. Counsel for NextGear followed up with counsel for Debtor via e-mail on March 17, 2023, once again reminding Debtor that the requested list of additional non-floor planned vehicles had not been provided and seeking feedback on whether Debtor is opposed to stay relief on such remaining non-floor plan vehicles. Counsel for NextGear once again advised counsel for Debtor in a March 20th e-mail that the requested list of non-floor planned vehicles had not been provided. A true and correct copy of the e-mail exchange between counsel for NextGear and counsel for Debtor from March 17th to March 20th is attached hereto as Exhibit "4."

11. As set forth in the First Lift Stay Motion, NextGear is in the business of providing secured financing to car dealers through which those car dealers may finance some or all of their inventory held for resale to retail consumers ("floor plan financing"). NextGear extended a credit line to Debtor, and to evidence its obligations to NextGear, Debtor executed and delivered a Demand Promissory Note and Loan and Security Agreement (the "Note").[4] Pursuant to the terms of the Note, Debtor granted to NextGear a perfected, first-priority blanket security interest in all personal property assets of the Debtor, including but not limited to cash collateral.[5]

12. Although counsel for Debtor indicated on March 20th that he intended to file a debtor-in-possession financing motion, cash collateral motion, and adequate protection motion by Wednesday, March 22, 2023, no such motions have been filed. Given Debtor's post-petition conduct concerning the use of cash collateral for improper purposes and failure to properly

---

[4] A true and correct copy of the Note is attached to NextGear's First lift Stay Motion as Exhibit "A," which is incorporated herein by reference.
[5] A true and correct copy of NextGear's UCC-1 Financing Statement is attached to NextGear's First Lift Stay

account for all such expenditures without the entry of an order of this Court, NextGear is filing the instant Motion to prohibit Debtor from using any additional cash collateral to NextGear's detriment and to account for any previous unauthorized use of cash collateral through the appointment of a Chapter 11 Trustee.

## III.
## Relief Requested

13. Section 1104 of the Bankruptcy Code authorizes a bankruptcy court to appoint a Chapter 11 Trustee at any time after the commencement of the case, but before confirmation of a plan, on the request of a party in interest and after notice and a hearing. Section 1104(a) of the Bankruptcy Code provides in relevant part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) For cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) If such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of the securities of the debtor or the amount of assets or liabilities of the debtor.

"Cause" to appoint a Chapter 11 Trustee is not, however, limited to the enumerated reasons described in §1104(a)(1) of the Bankruptcy Code. *Oklahoma Ref. Co. v. Blaik*, 838 F.2d 1133, 1136 (10th Cir. 1988); *cf. Little Creek Dev. Corp. v. Commonwealth Mortg. Corp.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (defining "cause" in context of dismissal statute). If cause exists

---

Motion as Exhibit "B" and is incorporated herein by reference.

under § 1104(a) of the Bankruptcy Code, a court *must* appoint a Chapter 11 Trustee. *Oklahoma Ref. Co.*, 838 F.2d at 1136. A court should also appoint a Chapter 11 Trustee "if such appointment is in the interests of creditors. 11 U.S.C. § 1104(a)(2).

14. In the instant case, appointment of a Chapter 11 Trustee is appropriate because Mr. Chavira's conduct subsequent to the petition date establishes Debtor has utilized NextGear's cash collateral, over which NextGear has a first priority security interest, without first seeking permission of NextGear or this Court. While it is unclear how much cash collateral Debtor has used, spent, or paid third parties or Debtor's employees, Debtor admitted to using such cash collateral in the operation of his business subsequent to the petition date of January 24, 2023 (the "Petition Date") at Debtor's 341 creditor's meeting held on March 1, 2023. Counsel for NextGear requested a copy of the CD recording of the 341 creditor's meeting, and a copy of the CD is being included in the paper copy of the Motion filed with the Court. For purposes of this Motion, the CD recording shall be referred to as Exhibit "5" and a blank paper copy placeholder referencing Exhibit "5" will be included in the electronic filing of this Motion.

15. It is also unclear per the Debtor's 341 testimony as to whether a debtor-in-possession account has been established and whether Debtor has ceased using cash collateral to operate his dealership. Additionally, Debtor is not currently able to acquire any additional motor vehicle inventory because Debtor has not filed any motion for debtor-in-possession financing and cannot use any existing cash collateral to purchase additional units for sale.

16. At the current time, it is difficult to foresee any path that will lead to a reorganization of the Debtor's business as opposed to a liquidation of the remaining vehicle inventory. Both NextGear and Vehicle Acceptance Corporation have already obtained stay relief as to vehicles financed through their respective floor plans. Upon information and belief, Debtor

only has a handful of additional vehicles that were not otherwise financed by a specific floor plan lender, although any such vehicles would still be subject to NextGear's blanket lien. Concurrent with the filing of this Motion, NextGear is requesting the automatic stay be lifted so that NextGear can pursue recovery of any such remaining vehicles not specifically financed by NextGear or Vehicle Acceptance Corporation.

17. For all of these reasons, the appointment of a Chapter 11 Trustee is warranted and justified because Debtor has engaged in gross mismanagement of the Debtor's estate by utilizing unknown amounts of cash collateral to continue the Debtor's business, pay employees, and potentially pay other third parties without the authorization or approval of this Court or NextGear, who has a security interest in such cash collateral. Appointment of a Chapter 11 Trustee will facilitate an investigation and accounting as to Debtor's use of cash collateral for the benefit of all creditors, including NextGear.

## IV.
## MOTION TO ENJOIN FURTHER USE OF CASH COLLATERAL

18. NextGear incorporates all previous paragraphs of this Motion by reference as if stated fully herein.

19. Section 105(a) of the Bankruptcy Code empowers this Court to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code and further authorizes this Court to issue injunctions to ensure orderly reorganization. Specifically, section 105(a) of the Bankruptcy Code states as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A movant requesting injunctive relief under Bankruptcy Code section 105(a) must satisfy the traditional four-part test for an injunction: (1) likelihood that the movant will prevail on the merits; (2) irreparable injury; (3) balance of the equities favoring the movant; and (4) a demonstration that the injunction would serve the public interest. *See, e.g., Matter of Commonwealth Oil Refining Co., Inc.,* 805 F.2d 1175, 1188–89 (5th Cir. 1986); COLLIER ON BANKRUPTCY ¶ 105.03[1] (16th ed. 2012). "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion.' " *See also Black Fire Fighters Ass'n of Dallas v. City of Dallas, Texas,* 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985)).

20. In the instant case, NextGear prevails on each of the four elements necessary for the imposition of an injunction because Debtor has admitted violating duties and obligations regarding use of cash collateral as set forth in 11 U.S.C. § 363, NextGear suffers irreparable injury in the loss of its cash collateral as a result of Debtor's improper and unauthorized use of cash collateral subject to NextGear's blanket security interest, and it is equitable and in the public interest to ensure debtors such as Debtor comply with the Bankruptcy Code in order to ensure an orderly administration of the bankruptcy estate.

21. Further, section 363(c) of the Bankruptcy Code contains the following provisions:

> **(c)(1)** If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
>
> **(2)** The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless--

  **(A)**  each entity that has an interest in such cash collateral consents; or

  **(B)** the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363. It is undisputed that Debtor did not seek permission to use cash collateral with this Court, no order was entered authorizing Debtor to use cash collateral, NextGear did not consent to Debtor's use of cash collateral, but Debtor chose to use NextGear's cash collateral anyway in the operation of its business per Mr. Chavira's testimony at the 341 creditor's meeting.[6] Debtor's conduct should be immediately restrained and enjoined such that Debtor is prohibited from using any additional portions of NextGear's cash collateral to operate its business, pay expenses, pay employees, or pay any other third party creditor of Debtor outside the confines of a Chapter 11 Plan of reorganization, which has not yet been filed or proposed by Debtor. For these reasons, NextGear requests the Court enjoin Debtor from any further or continued use of NextGear's cash collateral unless and until Debtor complies with its statutory obligations under 11 U.S.C. § 363 and makes a full accounting of what cash collateral has already been spent, for what purposes, and to which parties.

## IV.
### CONCLUSION AND REQUEST FOR RELIEF

  For the reasons stated herein, NextGear requests that this matter be set for hearing, and enter an order granting this Motion in substantially the same form as the form of the attached Proposed Order, appoint a Chapter 11 Trustee, and enjoin Debtor from any further or additional use of NextGear's cash collateral until and unless Debtor complies with its statutory obligations under 11 U.S.C. § 363 to obtain a court order granting use of cash collateral and accounts for any previous use of NextGear's cash collateral in full, along with such other and further relief as may

---

[6] *See* Exhibit "5."

be necessary.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax


/s/ Christopher V. Arisco
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for NextGear*

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 30, 2023, I placed a phone call to counsel for Debtor, Carlos Miranda, and conferred with Mr. Miranda on the relief requested in this Motion. Pursuant to the phone call, Mr. Miranda advised he was opposed to the relief sought herein.

/s/ Christopher V. Arisco
Christopher V. Arisco

## **CERTIFICATE OF SERVICE**

The undersigned converted the foregoing document into an electronic image, via portable document format (.pdf), electronically submitted same to the Internet web portal for the Clerk of this Court utilizing the Electronic Management and Electronic Case Filing system of the Court, which has caused service, via Simple Mail Transfer Protocol (e-mail), of a Notice of Electronic Filing of this imaged document to the below-identified parties on Friday, March 31, 2023; said e-mail provides an attributable hyperlink to the document, in portable document format, except for Debtor(s), and any other entity so identified below or on the EM/ECF filing sheet, whereas in that instance such document was mailed via First Class United States Mail, to-wit:

| **A&R Chavira, LLC**<br>6900 Gateway Blvd. East<br>El Paso, Texas 79915<br><br>*Debtor* | **Carlos A. Miranda**<br>Miranda & Maldonado, P.C.<br>5915 Silver Springs, Bldg. 7<br>El Paso, Texas 79912<br><br>*Attorney for Debtor* |
|---|---|
| **United States Trustee**<br>615 E. Houston, Suite 533<br>San Antonio, Texas 78295 | **Vehicle Acceptance Corporation**<br>Kemp Smith, LLP<br>**Attn: James W. Brewer**<br>PO Box 2800<br>El Paso, Texas 79999-2800 |
| **All those receiving ECF notification in this case and the attached list of the 20 largest unsecured creditors.** | |

/s/ Christopher V. Arisco
Christopher V. Arisco